Good morning, Illinois Appellate Court, First District, Fourth Division. Court is now in session. The Honorable Robert E. Gordon presiding. Case number 1-8-2185, In re, the marriage of Silvio versus Silvio. And with the lawyers who are gonna argue the case, please introduce themselves to the court. Michelle Jochner, your honors on behalf of Appellate, Rocco Salviola, the third. I don't know. I can't hear. Great. You need to go to, go to the top right corner of your computer. And unmute your microphone. Unmute your microphone. We can hear you. Can you hear us? Hello? Darren, maybe you need to call him. I can't hear. Okay. I'll call him on the phone and I'll, give me a second, please. I don't know why this isn't working. Yeah. Select a speaker, okay, which one do I click on? I don't know how to fix that. Well, the speaker thing is checked. Can you hear me now? No, not over the computer. Okay, Joe. Darren, can you see if he has any earplugs? Maybe you could put in earplugs. Yeah, do you have any earplugs? I'm going to, Joe, sign off, and then I'll send you a new invitation and sign back in. Darren? I can hear you, Justice. Is there any way to unmute him from your end? I tried it a couple of times. I just, I'm going to send him a new invitation and see if that solves the problem if he signs in with a new link. I can see on the screen, on my screen, his box has the, he's muted. No, he just signed out. I'm going to send him a new invitation and re-sign him in. Hold on, please. All right. Hold on. Hold on. Hold on. Hello? Yes, I can hear you over the phone. Can you hear me over the computer now? Talk again. Can you hear me now? No, I cannot. Your speaker might be turned down. See if the volume on your speaker is turned down. Okay. All right, try that. Can you hear me now? No, I've got, try now. Can you hear me now? No, I don't know why. Well, we did the test the other day. It worked perfectly. Well, I don't know what's wrong. I can't, everything's connected. Can you go to the volume on your computer? Go to the bottom right and turn up the volume on your computer. It might be the speaker on your computer. Take your mouse and go with the cursor down to the bottom and turn up the volume on your computer. Because we can hear and see you perfectly. Okay. Hey, Darren, I don't know. I'm very frustrated. Darren, check if he has some, something to put in his ears, a pair of earplugs, you know, for video like I use. He already said he didn't. I can see on the screen that he keeps muting and unmuting. Very faint, very faintly. Justice Lampkin, I can hear very faintly, but I don't know if I'm hearing her over my phone or through the computer. There was a sudden loud sound on my computer. He, what he did there, and I could see it on the computer, was he unmuted himself and remuted himself. So he has touched the right button. He just touched it twice. No, I unmuted, I muted and unmuted him. He didn't do that. I did that. Because I was trying to take it in and out to get him going again. But I, he didn't unmute. I did. Joel, can you hear us now? Not through the computer. Try it out, Darren. Yeah. Can you hear me now? Yes, yes. Okay. I got to turn it down a little. Talk, Darren. Can you talk for a minute? Oh, I just hung up. I'm going to call you back. No, no, no, it's fine. I can hear you. Okay. So, should I start? All right, Justice Gordon, you're all set now. I'm sorry. Okay. I'm sorry. I don't know what was wrong, but it's working now. All right. Are you going to ask for some time for rebuttal? Probably, but not much is the way I have it planned out. I don't know. All right. We'll give you five minutes for rebuttal. And you have 15 minutes to argue. That's 10 minutes and five. Thank you. Yes. All right. Go ahead. Proceed. Thank you. I'm sorry.  I'm sorry. I'm sorry. If the rest of the revocable trust was not property. Rocco Salviola would not have been able to rest control of over $60 million in liquidity. That was supposed to be in the joint estate of himself and Jennifer. And able to use the money. However, he pleases. Including funding, his end of this litigation, he has to fight for accountability. While Jennifer has to fight for accountability. Since it is property. There is no logical or legal reason to afford less protection. To the rest of this trust. Then to any other property interest in a dissolution case. Or for that matter. Before less security than the law provides spouses. In virtually every other financial context. Where the law takes an interest in the marital relationship. In this vein. Since he only stands on three. Flawed pillars. First, it states that a rez cannot be property, which is not only contrary to the actual concomitants. The reds here. But also to the McKellar case. Discussed in our briefs. And I would like to read. A quote. Directly from that case. In McCallaghan court said the principle distinction between a will and a trust. Is that in the former, the beneficiary has no interest. Until the death of this test. While in the latter. Beneficiary has an interest. The moment the trust is created. The fact that a beneficiary is actual enjoyment of the trust. It's contingent upon the Senate. Does not the gate, the existence of a present interest in the beneficiary. During the second law's lifetime. The second flag pillar that. I'm going to read. A quote. Sent to you only stands on is that it states that the legislature. Needs to enact a specific statute. To address the rows of a trust during dissolution litigation. What is. Actually already covered by the same provisions. Of seven 50 ILCS five. Oh one eight. That authorizes a court. To tie up and or protect any other asset. Not only does five oh one eight contain specific language. Allowing the court to enjoin the transfer. Concealing or otherwise disposing of assets. It states in sub paragraph two. Some said paragraph four. That the trial court can provide injunctive relief. Proper in the circumstances. And the injunctive belief. As the Hartney case. We cited stated. And it. Sighted sent to you only in the case. A court does have the authority to require funds. Taken from a joint account to be returned. During the. Penalty of the dissolution. Injunction orders are routinely issued. Prejudgment that preclude a party from withdrawing funds. Or changing the beneficiary of a retirement account. Account. In Smith versus Vanguard. A case upon which Rocco relies. The court noted that in New York life versus Sobel. A general five oh one injunction. Or. Prohibiting parties from transferring or concealing assets. For a bad, the husband. If you changing the beneficiary. Life insurance policy. In Smith for the only reason. Similar relief was not afforded. It was because the injunction that parties. And agreed to. Did not have language that would have included the retirement fund. That was involved. Also in Smith for the injunction had been dissolved. Before. The wife came to court and asked. For it to be enforced. What Smith for does not state. Is that a court is powerless to enter an injunction. That would preclude the disinheriting of a beneficiary. The third false pillar. As it's ruling that a court is powerless to prevent the disinheriting. Of the spouse. It even recognizes that it's, it's created that possibility.  The laws of the state of Illinois. Are tailored to the Judeo-Christian concept of marriage. And consistently prevent the financial disenfranchisement. Of the spouse. Spouses of an intestate. Decision are automatically entitled to the set portion of the estate. If a will has attempted to support that entitlement. The surviving spouse can renounce it to acquire their statutorily mandated share. In a dissolution context. The court may not only protect against the. Movement or secreting of assets under 501. It can order life insurance, protect payment of future obligations. And even where there is a prenuptial agreement with a waiver of maintenance. The court can vacate that provision as an equitable. If one spouse.  On the other during a marriage. In essence, It is hardly surprising that judge RC's initial instinct on reading Jennifer's petition. Was that of course it should be granted. But then he later found his hands were tied by Santiago. It is our position that it is time for the hands of trial courts to be untied. It is clear simply from the way Rocco accomplished his goal that he and everyone helping him do it as well. First, he got new estate attorneys to replace the ones who had prepared the agreed estate plan decades earlier. And the amendments that had maintained that original plan. Second, the beneficial interest in the trust was changed just before he filed for dissolution. Plainly demonstrating it was part of divorce planning. And third, he did not produce the new trust documents at the beginning of the case in response to proper discovery requests. But instead, after several months went by Jennifer's council acquired them from a third party. This conduct was blatantly reprehensible. If Santioli precludes reprehensible conduct intended to defraud a spouse from being remedied, then Santioli should go in the dustbin. Even if the remedy Jennifer saw was not automatic under 501, which we maintain it certainly is. In this framework, minimally Jennifer was entitled to a hearing, which would examine what her understanding of the original estate plan was. Can I stop you for a moment? Can I stop you for a moment? How do we have jurisdiction to hear this case? Well, I, I have a few things to say to address that first. I was hoping that, you know, that we're here a year and a half later. And I thought we wouldn't be here for an oral argument. The court really thought it had no jurisdiction, but I would initially, this is not a 303 appeal under which the court does not have jurisdiction. If the notice of appeals is filed late here, Jennifer filed a two count injunction petition. Both accounts were just in the same subject matter. One count was initially denied the other count. She was given, it was denied or dismissed with leave to amend. She amended it. It was ruled on, I think it's September of 2017. The notice of appeal was filed within 30 days of that. And I think here, you know, there's common language that says, you know, the rules are for the litigants. They're not binding upon the court. And since this isn't a 303 appeal, I think the subject matter is important here. And the court would have the discretion to hear it. I think the notice of appeal was timely filed under what the circumstances were here. And the court allowed prior attorneys who started out the appeal to amend its staffing statements to say under which Supreme court rule, they were seeking the appeal. And this clearly is a 307 appeal because it's a ruling on an injunction order. So that's my position on the jurisdiction of the court. Okay. Um, so, uh, where I was was that, um, Jennifer minimally should be entitled to a hearing to examine her understanding of what the estate plan was, including the way that beneficial interest could be manipulated or not, whether they only have one attorney, whether she was independently advised and to question Rocco on his intent and motivation for doing what he did in a very surreptitious manner. There is no indication in this record at all that Jennifer understood the beneficial interest in what first was the business. And then the $60 million that the sale of the business produced. And that was all clearly marital property. There's no indication. She knew that it could be pulled from her at Rocco's when, and without her knowledge in that manner, this case differed some sense of the only at any rate, since they're there, the wife alleged there were poor over wills for the trust property, which is true, uh, automatically made them susceptible to the legal mandate that it will may always be revoked here. The only way to really agree to state plan was entirely in the trust. And as I read from the McCalloch, uh, a trust is different from a law in the sense that it can't just, um, be willy nilly revoked. But I do want to emphasize that a hearing is an alternative remedy here because we believe there is no reason not to restore the parties to the last one contested situation regarding the trust and do that. Now I recognize that the actuarial odds of Rocco passing away before a judgment is entered are low, but they do exist and the consequences are both dire and irreparable. Also punishing and completely avoidable here by injunctive relief is the stress expense and practical difficulties of being put at an unwarranted disadvantage, uh, to, for, for Jennifer to protect, keep track of pursue and acquire where substantial marital assets, as is noted in the briefs at the injunction hearing, Rocco was already flirting with advocating the notion that the $60 million is now removed from the marital estate. He also misrepresented to the court that there were assets sufficient to compensate Jennifer for any loss to it. He referenced $30 million in real estate holdings without disclosing that there were encumbrances on that real estate. And he alleged the existence of a $30 million life insurance trust that would benefit Jennifer without telling the court that Jennifer would not be the trustee of any such funds. Accordingly, an injunction is necessary just to stop the irreparable damage engendered by a trustee as being postured to looter of any future security. That's what this does. None of the trust cases cited by the parties in their briefs can bring any comfort to Rocco. Romano specifically stated that a beneficial interest cannot be revoked if the purpose is to defraud a spouse. Any person with the power to change a beneficiary and changes it to himself on the cusp of a divorce should be presumed to be engaging in such an artifice. The Roque asked in Romano, the principal trust cases only sanctioned changes to trust trust, which have been created by the spouse's initial nuclear family to protect that family's non-marital estate. And none of the changes there were made in contemplation of the divorce. And some Santioli is not good law.  It is contrary to the intent of the Illinois marriage and dissolution of marriage act. And there is no appropriate basis for that. And we asked the court to reverse the denial of the injunction. Thank you. Any questions. I just had one question council.  I would love to discuss the Santioli case. But I want you to tell me how I get around rule three Oh seven, which says that you only have 30 days after the court rules on your injunction to file a notice of appeal. Your, the ruling was on may 1st and I think it was sometime in October that you filed the notice of appeal. So I want to know how we have jurisdiction. I know you, let me just finish. I know you have the alternative three Oh four requests, but you never got the judge to give you the three Oh four language. So under either of those avenues, I want to know how we have jurisdiction. Okay. First I'd like to minimize the use of the word you, I was not the attorney at the time, but I understand. But I can't change what the facts are. I can't change the timing of what occurred. My position as I explained it, when Joseph scored and brought up the jurisdiction issue is that it was a two count injunction complaint and they were both, both addressing the use and transfer of funds with regard to the rocket three irrevocable trust. When judge RC dismissed the count, which we're addressing in the court now, he gave leave to Jennifer to amend the other count. And when that count was resolved, and I think it was on September 28th, the Jennifer's then attorneys filed their notice of appeal within 30 days of that order. I said, I think the pleading is one pleading addressed to the same subject matter asking for the same kind of relief. And I think that there is no inherent flaw in waiting for both counts to be addressed before appealing. If the second count had been dismissed as well, which it was not, what you would have wound up with is under your honors, a potential scenario that the first count should have been appealed from 30 days after it's dismissal. You would have wound up with a second appeal and a motion to consolidate and we'd be in the same place at the same time. So I, I, I don't, I don't see a procedural flaw in waiting for both counts to be disposed of before the appeal proceeded. Obviously if the court sees otherwise I have, I don't have any basis for other than what I've already argued. Sure. All right. Thank you, counsel. I have no questions. Okay. Uh, we'll hear the response now. And, uh, please talk about the jurisdiction also. Yes, of course. Your honors. Good morning, your honors. And may it please the court, Michelle Jockner, on behalf of Apolli Rocco Salviola the third, your honors have reviewed Rocco's Apolli's brief, which explains in detail first how Jennifer untimely filed this appeal. And it's requires it's dismissal because no valid jurisdictional basis exists for review. And second, should this court disagree and find that there is jurisdiction, it nevertheless is crystal clear that the judgment of the circuit court denying Jennifer's request for injunctive relief must be affirmed. You have just heard about 15 minutes or so of wholly unfounded accusations against Rocco and during which Jennifer has been without basis passed as a victim. Let's take a moment to set the record straight. As Rocco notes in his brief, most of the claims raised by Jennifer are made without any citation to record to the record on appeal in the argument section of her brief, including that he transferred or moved roughly 60 million into the revocable trust shortly before the start of the divorce action. This claim, which was the basis for Jennifer's request for the court to treat this matter as an emergency was thereafter retracted by Jennifer's counsel in open court when he was confronted with evidence that it was false. In fact, that money has been held in that trust, which was created in 2003 yet this retraction was not disclosed to your honors by Jennifer in her brief who still relies on this inaccurate claim and this withdrawn claim in this appeal. Also, also an accurate is Jennifer's repeated claim, particularly amplified in her reply brief, but also absent any citation to the record that Rocco's changing of the debt beneficiary of his trust dispossessed her of the entire 60 million trust corpus to which she claimed again, quote, that she was entitled to. However, before Rocco's 2017 amendment articles, 1.2 3.2 and 4.1 of the 2003 trust document, which is in the record shows that all Jennifer was entitled to upon Rocco's death were mandatory income distributions from a fraction of the entire trust, which Rocco had decided to divide upon his death into a separate marital trust and to a family trust. Finally, it's important to note that apart from any monies that she could receive from this irrevocable trust, it is undisputed that upon Rocco's death Jennifer will nevertheless receive tens of millions of dollars as she is the beneficiary of an irrevocable trust that holds 30 million in life insurance and a life insurance policy on Rocco. And the parties hold 16 million of real estate and personal property as joint tenants with the right of survivorship outside of the trust. This reality is quite different from the picture that has been painted for your honors. In addition, many portions of Jennifer's reply briefly to the conclusion that she believes that different rules should apply to her as opposed to every other litigant who appears before this court. For instance, she attacks Rocco for legitimately pointing out that she violated certain Supreme court rules, including providing citations to the record on appeal. He also attacks Rocco for validly questioning whether this court has jurisdiction to hear this matter, even though jurisdiction is a threshold issue that may be raised at any time. And even though this court has an independent duty to consider its jurisdiction and dismiss this appeal, whereas here jurisdiction is lacking. Finally Rocco was also criticized for legitimately arguing that Santioli is factually analogous and controlling in this case. Jennifer then goes so far as to impugn Rocco for noting these deficiencies, casting these legitimate positions as quote, part and parcel of a conniving artifice designed to thwart the rule of law, end quote. And you can find that at page 15 of her reply. Respectfully, your honors, because such comments wholly lack any valid foundation and are improper, they should be summarily disregarded by this court. Now, again, because your honors are well familiar with Rocco's brief, we'd like to take the remainder of our time to specifically touch upon a few key significant points. Again, I'm sorry, please though, address our jurisdiction. Yes, your honor. I was just, that was the point I was just getting to. Thank you. Thank you. So looking first to this threshold issue of jurisdiction as detailed in Rocco's brief, Jennifer has taken multiple inconsistent positions regarding the basis for this court's jurisdiction to hear this appeal. At first, she invoked rule 307A1, which allows an interlocutory appeal from an order refusing injunctive relief, but which requires that such appeal be filed within 30 days of the entry of the May 1st, 2018 order, which would have been on May 31st. Instead, Jennifer, as part of her strategy, decided to file a motion to reconsider in the circuit court on May 30th. And only after that motion was decided that she then filed her notice of appeal with this court on October 11, which was 163 days after entry of the order denying the injunction. And therefore it was 133 days too late. Because it is well settled by the trophy time case and its progeny that the filing of a motion to reconsider will not toll the running of the 30 day deadline. Her notice of appeal was untimely. And your honors, you heard an argument that was raised for the first time by council today regarding jurisdiction. This is the first time that I have heard the argument saying that because there were two counts in the original injunctive petition, and because she was allowed to replete the second count, that somehow that count saves jurisdiction in this case. That is not correct. That is not correct. Jennifer herself in her brief to this court specifically confines her claim of error in this appeal only to the circuit court's denial of her request that to the trust and reinstate her as a beneficiary. That is at page 20 of Jennifer's brief specifically confined it to that only that issue. That was not the issue that was in the other part of the injunction petition that was completely separate. She was allowed to replete that. She amended it. And as far as I am aware, it never went anywhere after that. They never pursued it. So your honors, again, that argument, that line of argument should be wholly disregarded because that was not raised in the brief that is raised here for the first time at oral argument. Let's also then turn to the second basis of jurisdiction, which was alleged in Jennifer's brief and which council does not speak to at all today. And that was rule 307 a one. She attempted to hedge her bets. Your honor, knowing full well that 307 a a one was barred her appeal because it was untimely. She then added rule 304 B one as a second jurisdictional basis. But as we explained in our brief rule, 304 B one has no place in this appeal for two reasons. First, the rule requires a final judgment and a preliminary injunction order is merely provisional in nature and that final. And second, the order was outside the narrow scope of that rule, which applies only to final orders entered in the comprehensive estate administration proceedings. As the appellate, Jennifer has failed to meet her burden to establish that any valid jurisdiction exists in this court. After Rocco detailed these numerous jurisdictional deficiencies in his brief, Jennifer and her required refund successfully attempted to seek refuge and her baseless claim that Rocco was in his words, quote, desperately trying to avoid a ruling on the merits of this matter and quote by raising these jurisdictional issues. But your honors know this is a fundamental threshold issue that must be addressed every time that you entertain an appeal in this court. It's no desperation on Rocco's part. Respectfully, your honors, it is Jennifer who appears desperate for this court to ignore that her appeal lacks jurisdiction under any basis. Justice Lampkin, you are correct. Also that at one point Jennifer tried to attempt to get real 304 a language from the trial court. Uh, that did not work either. The trial court refused to grant 304 a language because this is not a final order. But again, she tried to throw everything against the wall, every jurisdictional basis and nothing stuck and it doesn't. Your honors, there is no jurisdiction here for this appeal and for these reasons and everything that is said specifically in Rocco's brief, this appeal must be dismissed because no valid jurisdictional basis exists for review. However, should you disagree? Uh, the second issue presented here then would be whether Santeoli controls your honor. The record clearly, clearly establishes that Jennifer failed to plead a valid cause of action for injunctive relief and that the court properly dismissed her petition based upon the nearly identical case of Santeoli where this court correctly held that a beneficial depth interest in the trust is a mere expectancy and not a present property interest under the IMDMA to be protected by a preliminary injunction about him. Your honors, this is a very straightforward matter. Although confusion arises because Jennifer conflates several concepts from divorce and probate law. The key here to remember is that all Rocco did was to change the testamentary disposition of his property, of his property. It was in his name. This is the same, just as if he had changed his will, which, which he has a right to do and which is indeed what he did. Because if you review the trust document, it is clear that this trust operates as his will substitute, including specific disposition of pieces of personal property. It goes into that much detail. This is his will substitute. However, your honors to be clear, once the divorce action was filed, the trust was, and it remains under the jurisdiction of the divorce court and it was never removed from the marital estate despite the change in the debt beneficiary. Accordingly, this is not a marital property issue. The divorce court has retained authority to characterize that trust as marital and allocated between the parties. And frankly, there is no dispute that it is marital. The court retains jurisdiction and it will allocate it between the parties at the time of dissolution. The change of the debt beneficiary designation is a completely separate concept and has not removed the corpus of the trust from the jurisdiction of the divorce court. However, your honors would never know this by reading Jennifer's brief and hearing the arguments today. Instead, she is asking that you order the divorce court to deal with the party's rights in the event of death. Yet, such probate matters are not within the divorce court statutory authority under the IMDMA. Indeed, it is wholly outside the ambit of that act. Although it is well settled that dissolution courts have subject matter jurisdiction over all justiciable matters, subject matter jurisdiction is different from the limited authority conferred on that court by the IMDMA. Your honors, Justice Mary Jane Tice correctly explained this difference in her Sentioli opinion, noting that if a party to a divorce action dies prior to a final judgment, the assets in his trust would then be subject to probate law, which has different objectives rather than an equitable distribution, which is that an equitable distribution is what you would see in a divorce case. Under a probate case, it's property rights. In fact, we would not even be having this conversation today if Jennifer had never been named as an income beneficiary of the trust by Rocco at some point prior to the filing of the divorce. There is no authority, your honors, in the IMDMA or in the probate code to require someone to change their estate plan prior to leaving property to their spouse, whether they are married or whether they are going through a divorce. There is no such authority. Justice Tice also correctly found in Sentioli as here, that rather than maintaining the status quo, granting an injunction in such instances could result in the wife being overcompensated because it would be different if he were to die. She may get more than under the equitable. She would get more under death than if it would be in the divorce case. Indeed, Jennifer has not shown how the instant matter is factually distinguishable from Sentioli. Indeed, she does not because she cannot as the matters almost completely mirror each other. The facts are incredibly, incredibly similar here. Sentioli is a hundred percent controlling. And although we have heard offers of citation through some case law, all those cases were factually in a posit as Rocco described in detail in his brief. In addition, in her reply brief, she offers no effective response to the fact that our Supreme court recently approved the reasoning of Sentioli in its 2019 decision in Smith versus Vanguard. It's not Smith bird. That's a different case. It's Smith versus Vanguard. Instead, she makes citation in her, in her reply brief to a factually in a posit decision and Claxton versus Reeves, a case that discusses whether there was sufficient evidence presented to the circuit court to support a bifurcated divorce. And it has no relevance here. None of the cases, your honor, that is cited that are cited by Jennifer in her brief or today, none of them have any relevance. None in some, because Sentioli establishes that Jennifer has no property rights under the beneficiary of Rocco's trust, the circuit court properly dismissed her petition for injunction. And that judgment should be affirmed by this court. Now your honors, finally, in the last four pages of Jennifer's opening brief, she's somewhat casually invites you to overturn Sentioli, alleging that it was wrongly decided, but failing to offer any cohesive argument as to why this court should Indeed, she spends not one drop of ink to even acknowledge the starry decisive doctrine. That must necessarily be a launching point of any analysis or an overruling of precedent is urged. Indeed, Jennifer merely offers you a string site to seven statutory provisions and the succession of one sentence declarations that are untethered to any legal argument at all. Notably also in her reply brief, Jennifer makes no formal argument regarding why Sentioli should be overruled. Instead, she tries to distinguish Sentioli in the reply brief and really doesn't talk about why it should be overruled and why starry decisive should be departed from effectively. She abandoned her position and her reply brief. And that's why I'm surprised to hear it being resurrected here today. Justice Tice, your honors justice Tice got it exactly right when she authored Sentioli in 2002. And despite amending section 503 and many other act, uh, portions of the IMDMA several times thereafter. You're already over your time. So sum up. I will. Thank you, your honor, including the legislator included an almost total rewrite of the IMDMA in 2016 and 2017. And it never indicated any displeasure with Sentioli at all. Never changed anything with respect to Sentioli. Jennifer's quarrel appears to be one with the legislature. Your honors. And it has no remedy here. In sum, we ask that you affirm the judgment of the circuit court of Cook County in its entirety. Thank you so very much. And we welcome any questions that you may have. No, thank you. No questions. Okay. Let's, uh, let's hear the rebuttal and limit the rebuttal to the jurisdictional question. Uh, I think that Andy kept me terribly. I will say this, that, um, Uh, Council spoke out of both sides of the mouth of the jurisdictional question, where she said, well, the order was final. Uh, for the purposes of appealing it within 30 days in may, but then when 304 B one came out, suddenly it wasn't final. So, uh, And, and, uh, I've done over 600 of these I'll dispense with responding to her personal attacks on my competence, but I will say that, um, One thing I've learned over 46 years is that when someone, uh, Are you every possible thing, uh, why the court shouldn't hear a jurisdiction didn't cite enough cases. You violated rule three 41. I think that says a lot about what they think of the merits of the case. One thing that was never responded to. And the argument just now was what is the fundamental legal or logical reason? Why the beneficial interest in a trust can be changed. Pendant lead to disinherit a spouse. And, uh, in the event that the spouse who changed the beneficiary dies during the litigation. When you can enjoin someone from doing that in a pension, a retirement fund, a life insurance policy, or any other asset. Um, what's the, uh, fundamental reason why a spouse who's supposed to be the beneficiary of a trust can be disinherited. Pendant late when no other beneficial interest can be treated in that manner. Uh, That's all unless you have other questions. Okay. Well, thank you very much. Uh, uh, uh, you guys gave us a very interesting case and that you'll have the, uh, order or an opinion, uh, very shortly. Thank you.